**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **RONNIE PARNELL,** | ) | |
| **N56008,** | ) | |
| | ) | `17-717-DRH` |
| **Plaintiff,** | ) | |
| | ) | **Case No. 16-cv-1144-NJR** |
| **vs.** | ) | |
| | ) | |
| **J. LASHBROOK,** | ) | |
| **WEXFORD HEALTH SOURCES, INC.,** | ) | |
| **DR. SCOTT,** | ) | |
| **SGT. CHAPMAN,** | ) | |
| **LT. PIERCE,** | ) | |
| **COUNSELOR LANDIS,** | ) | |
| **NURSE PEEK,** | ) | |
| **C/O SMITH,** | ) | |
| **OFFICER DUDEK,** | ) | |
| **WARDEN HODGES,** | ) | |
| **LOVE,** | ) | |
| **JOHN DOE, 1,** | ) | |
| **JOHN DOE, 2,** | ) | |
| **JANE DOE, 1,** | ) | |
| **JANE DOE, 2,** | ) | |
| **JANE DOE, 3, and** | ) | |
| **JANE DOE, 4,** | ) | |
| | ) | |
| **Defendants.** | ) | |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Now before the Court for consideration is the First Amended Complaint (Doc. 9) filed by Plaintiff Ronnie Parnell, an inmate who is currently incarcerated in Pinckneyville Correctional Center ("Pinckneyville"). Plaintiff filed this civil rights action pursuant to 42 U.S.C. § 1983 in order to address constitutional violations that occurred at Lawrence Correctional Center ("Lawrence") and Pinckneyville.

The original Complaint did not survive screening and was dismissed without prejudice on February 15, 2017. (Doc. 8). Plaintiff was granted leave to re-plead his claims, and he timely filed a First Amended Complaint on March 1, 2017. (Doc. 9). The First Amended Complaint is now before the Court for a preliminary review pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> > (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> > (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

As a part of screening, the Court is allowed to sever unrelated claims against different defendants into separate lawsuits. *See George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). Severance is important, "not only to prevent the sort of morass" produced by multi-claim, multi-defendant suits "but also to ensure that prisoners pay the required filing fees" under the Prison

Litigation Reform Act. *Id.* In this action, Plaintiff's claims pertaining to events occurring at Lawrence are unrelated to his claims that arose at Pinckneyville. Therefore, consistent with *George*, these claims will be severed into new case, given a new case number, and assessed a separate filing fee.[1]

## The First Amended Complaint

*Lawrence*

In 2011, while incarcerated at Lawrence, Plaintiff injured his hip during a game of handball. (Doc. 9, p. 6). He was examined by John Doe 1, a physician employed by Wexford. *Id.* John Doe 1 misdiagnosed Plaintiff as suffering from arthritis. (Doc. 9, pp. 6-7). From 2011 through 2012, Plaintiff was re-examined by John Doe 1 every two weeks. (Doc. 9, p. 7). During these examinations, John Doe 1 failed to identify his mistaken diagnosis and continued to opine that Plaintiff was suffering from arthritis. *Id.* The misdiagnosis resulted in pain and suffering, as well as the loss of bone. ((Doc. 9, p. 8); *see also* (Doc. 9-1, pp. 1-2, indicating that Plaintiff is in severe pain and in a wheel chair)).

A grievance attached to the First Amended Complaint suggests that, as of April 2012, Plaintiff had been seen by outside physicians at the University of Illinois and "the University of St. Louis." (Doc. 9-1, pp. 1-2). The grievance indicates that Plaintiff was suffering from an infection and at risk of needing a hip replacement. *Id.*

In December 2012, Plaintiff was examined by an outside physician at a hospital in St. Louis, Missouri. (Doc. 9, p. 7). That physician conducted an examination and performed a

---

[1] In dismissing the original Complaint, the Court noted that Plaintiff described events occurring at Lawrence but did not appear to be asserting any claims pertaining to those events. Instead, the information regarding Lawrence was offered as background information. Accordingly, the Court did not interpret the original Complaint as asserting any claims against officials at Lawrence. The Court advised Plaintiff, however, that to the extent he intended to bring any claims pertaining to events occurring at Lawrence, those claims were unrelated to the events occurring at Pinckneyville and would need to be pursued in a separate action. (Doc. 8, p. 5).

biopsy. *Id.* The examination and biopsy revealed that Plaintiff was suffering from a festering infection causing hip deterioration and not arthritis. *Id.* On January 3, 2013, Plaintiff underwent hip replacement surgery. *Id*. After completing surgery, Plaintiff was instructed regarding the importance of exercise. *Id.*

On or about February 15, 2013, an unidentified male physician provided Plaintiff with a medical permit, authorizing him to use a cane indefinitely. *Id.* The physician also prescribed physical therapy. (Doc. 9, p. 8). On or about March 2, 2013, Plaintiff attended a physical therapy session with an unidentified female physical therapist. *Id.*

Plaintiff considered filing a lawsuit regarding his hip injury and initial misdiagnosis. *Id*. On October 25, 2014, Plaintiff asked John Doe 2 for information about filing a grievance and civil suit pertaining to the misdiagnosis. *Id.* John Doe 2 told Plaintiff that if he filed a grievance or pursued a civil action, he would be punished with the loss of good-time credit. *Id.* As a result of this threat, Plaintiff did not file a grievance or pursue a civil action until now. *Id.* Plaintiff further contends that the conduct of John Doe 2 amounts to discrimination because John Doe 2 is white and Plaintiff is black and that his interaction with John Doe 2 somehow led to Plaintiff being transferred to Pinckneyville. *Id.*

### Pinckneyville

In February 2015, Plaintiff was transferred to Pinckneyville. *Id.* He was housed in the segregation unit in a cell with a healthy inmate. *Id.* Chapman was responsible for Plaintiff's cell placement. *Id.* From February 2015 through April 2015, Scott, Jane Does 1 through 3, Chapman, and Pierce interfered with Plaintiff's ordered medical treatment, including access to patient education and physical therapy. (Doc. 9, p. 9). These Defendants also exposed Plaintiff to "an

ongoing unnecessary risk to future serious physical and mental harm from [Plaintiff's healthy cellmate]." *Id.*

In April or May 2015, Plaintiff spoke with Landi, a counselor at Pinckneyville, and sought information pertaining to filing a grievance and lawsuit. *Id.* Landi threatened Plaintiff. *Id.* Landi indicated that if Plaintiff filed a grievance or pursued a lawsuit, he would be "treated like a trouble-maker living a disadvantaged life without commissary, law library, and therapy or disabled recreation in gym." *Id.* From April 2015 to the present, all of Plaintiff's requests for grievance slips and to visit the law library have been ignored. Also, with one exception in February 2017, Plaintiff's requests for physical therapy have been ignored. *Id.*

On April 12, 2016, Smith (a correctional officer), Peek (a nurse), and Jane Doe 4 (a nurse) confiscated Plaintiff's cane, interfering with a prescribed course of treatment. (Doc. 9, p. 10). On April 25, 2016, Plaintiff fell in the shower and injured his finger. *Id.* Plaintiff contends he fell because his cane had been confiscated. *Id.*

In October 2016, Plaintiff was reassigned from housing unit 2D to housing unit 3A, cell 64. *Id.* The newly assigned cell was the last cell down a long gallery on the second floor. *Id.* Plaintiff complained to Dudek, a correctional officer, about his hip replacement. *Id.* Dudek disregarded Plaintiff's complaint and ordered Plaintiff to carry his own mattress, a heavy property box, and a fan up the stairs to his new cell. *Id.* Additionally, Dudek directed Plaintiff to take the top bunk. *Id.* After two days, Plaintiff was transferred to a new cell (described as "house one A36"). *Id.* Plaintiff filed a grievance regarding this incident on October 29, 2016. (Doc. 9-1, pp. 3-4).

***Claims Pertaining to Wexford, Hodges, Lashbrook, and Love***

On Page 11 of the First Amended Complaint, Plaintiff includes a paragraph that directs generic and conclusory allegations against Hodges (former warden of Lawrence), Lashbrook (former warden of Pinckneyville), Love (assistant warden at Pinckneyville) (collectively the "Supervisory Defendants"), and Wexford (a private corporation contracted to run the healthcare unit at Lawrence and Pinckneyville). Plaintiff generally alleges that these Defendants are subject to liability for (1) failing to implement a policy that would prevent unconstitutional behavior on the part of medical staff; (2) supervising employees who mishandled and/or ignored Plaintiff's medical records and grievances; and (3) failing to intervene in Plaintiff's unconstitutional treatment.

***Request for Relief***

Plaintiff seeks monetary damages. (Doc. 9, p. 13). Plaintiff also indicates that he is seeking, without further explanation, "injunction & nominal & declaratory relief." *Id.* The Court construes the latter as a request for injunctive relief at the close of the case and as being related to the claims that arose at Pinckneyville, where Plaintiff is currently incarcerated. The Court notes, however, that it is unclear precisely what Plaintiff is requesting with respect to his request for injunctive relief.

## Discussion

To facilitate the orderly management of future proceedings in this case, and in accordance with the objectives of Federal Rules of Civil Procedure 8(e) and 10(b), the Court deems it appropriate to organize the claims in Plaintiff's First Amended Complaint into the following counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. Any other claim that is

mentioned in the First Amended Complaint but not addressed in this Order should be considered

dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.

**Count 1 –** Eighth Amendment deliberate indifference claim against John Doe 1 for his treatment of Plaintiff's hip injury.

**Count 2 –** First and/or Fourteenth Amendment access to the courts claim against John Doe 2.

**Count 3 –** First Amendment prior restraint claim against John Doe 2

**Count 4 –** Fourteenth Amendment equal protection claim against John Doe 2.

**Count 5 –** Eighth Amendment deliberate indifference claim against Scott, Jane Does 1 through 3, Chapman, and Pierce for denying Plaintiff access to a physical therapist and patient education, contrary to existing medical orders, between February 2015 and April 2015

**Count 6 –** Eighth Amendment deliberate indifference claim against Scott, Jane Does 1 through 3, Chapman, and Pierce for exposing Plaintiff to an ongoing risk of future physical and mental harm from Plaintiff's healthy cellmate between February 2015 and April 2015.

**Count 7 –** First Amendment retaliation claim against Landi.

**Count 8 –** First and/or Fourteenth Amendment access to the court's claim against Landi.

**Count 9 –** Eighth Amendment deliberate indifference claim against Smith, Peek, and Jane Doe 4 for confiscating Plaintiff's cane on April 12, 2016.

**Count 10 –** Eighth Amendment deliberate indifference claim against Dudek for his conduct in October 2016 when he transferred Plaintiff to a new cell assignment.

**Count 11 -** Eighth Amendment cruel and unusual punishment claim against Dudek for his conduct in October 2016 when he transferred Plaintiff to a new cell assignment.

**Count 12 –** Constitutional claims against Hodges, Lashbrook, Love, and Wexford for (1) failing to implement a policy that would prevent unconstitutional behavior on the part of medical staff; (2) supervising employees who mishandled and/or ignored

Plaintiff's medical records and grievances; and (3) failing to intervene in Plaintiff's unconstitutional treatment.

## <u>Dismissal of Count 12</u>

Plaintiff generally alleges that Wexford and the Supervisory Defendants are subject to liability for (1) failing to implement a policy that would prevent unconstitutional behavior on the part of medical staff; (2) supervising employees who mishandled and/or ignored Plaintiff's medical records and grievances; and (3) failing to intervene in Plaintiff's unconstitutional treatment.

*Respondeat superior* liability does not apply to private corporations or supervisory officials under § 1983. *Perez v. Fenoglio,* 792 F.3d 768, 781 (7th Cir. 2015); *Iskander v. Village of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982). Moreover, the denial of a grievance or the rejection of a letter by a prison official, standing alone, is generally not enough to violate the United States Constitution. *See, e.g., George v. Abdullah*, 507 F.3d 605, 609 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation."); *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011) ("[T]he alleged mishandling of [a prisoner's] grievance by persons who otherwise did not cause or participate in the underlying conduct states no claim."). Accordingly, allegations that Wexford and the Supervisory Defendants are vicariously liable for an employee's failure to respond to a grievance state no claim.

Plaintiff also alleges that Wexford and the Supervisory Defendants are subject to liability for failing to implement policies that would prevent constitutional violations. Allegations that senior officials were personally responsible for creating the policies, practices and customs that caused a constitutional deprivation can substantiate a § 1983 claim. *See Doyle v. Camelot Care Centers, Inc*., 305 F.3d 603, 615 (7th Cir. 2002). Likewise, a corporate entity will incur liability

in a civil rights action where it established a policy that directly caused the constitutional violation. *See Woodward v. Corr. Med. Serv. of Ill., Inc*., 368 F.3d 917, 927 (7th Cir. 2004). In this case, however, Plaintiff's allegations pertaining to failure to implement a policy are conclusory and do not meet the pleading standards set forth in *Twombly* and Federal Rule of Procedure 8. *See Twombly*, 550 U.S. at 555.

Finally, Plaintiff contends that Wexford and/or the Supervisory Defendants are subject to liability for failing to stop "unconstitutional treatment." The Seventh Circuit has recognized that a prison official may be liable if an inmate tells the official of an ongoing medical problem that is not being treated and the official does nothing. *See Perez v. Fenoglio*, 792 F.3d 768, 782 (7th Cir. 2015). Plaintiff's vague and generic allegation falls far short of stating such a claim.

For the reasons discussed above, Count 12 shall be dismissed without prejudice for failure to state a claim. Additionally, the Court notes: (1) Wexford shall be dismissed from this action without prejudice because Count 12 is the only count directed against it; (2) Hodges and Lashbrook shall be dismissed from this action without prejudice because Count 12 is the only count directed against them and because neither Defendant is an appropriate official capacity defendant;[2] and (3) Love, in his individual capacity, is dismissed from this action without prejudice because Count 12 is the only count directed against him; however, Love shall remain in this action in his official capacity for the purpose of addressing any injunctive relief that might be granted with respect to Pinckneyville and/or to facilitate discovery pertaining to unidentified

---

[2] As previously noted, Plaintiff's First Amended Complaint includes a generic request for injunctive relief. The Court has interpreted this request as one for injunctive relief at the close of the case and as being related to Plaintiff's Pinckneyville claims. Additionally, Plaintiff's claims pertaining to Pinckneyville and Lawrence involve unidentified parties. As former wardens, neither Defendant is an appropriate official capacity defendant with respect to these issues.

Pinckneyville Defendants. If Love is unable to fulfill his official capacity duties, a more appropriate official capacity defendant may be substituted in his stead.

## Severance

Plaintiff's remaining claims fall into two distinct groups. The first set of claims (Counts 1 through 4) arose during Plaintiff's incarceration at Lawrence from 2011 until approximately January 2015. The second set of claims (Counts 5 through 11) arose during Plaintiff's incarceration at Pinckneyville from February 2015 until the present. Plaintiff brings these two sets of claims against different defendants, and the claims are unrelated to one another. As such, Counts 1 through 4 and Counts 5 through 11 belong in two separate actions.

The more recent claims that arose during Plaintiff's incarceration at Pinckneyville (Counts 5 through 11) shall be severed into a separate case pursuant to *George v. Smith*, 507 F.3d 605 (7th Cir. 2007). In *George*, the Seventh Circuit Court of Appeals emphasized that unrelated claims against different defendants belong in separate lawsuits. *Id*. This is "not only to prevent the sort of morass" produced by multi-claim, multi-defendant suits, "but also to ensure that prisoners pay the required filing fees" under the Prison Litigation Reform Act. *George*, 507 F.3d at 607 (citing 28 U.S.C. § 1915(b), (g)). *See also Owens v. Godinez*, No. 15-3892, 2017 WL 2655424 (7th Cir. June 20, 2017) (strongly encouraging district courts to enforce the directive of *George*). Claims against different defendants, which do not arise from a single transaction or occurrence or a series of related transactions or occurrences and do not share a common question of law or fact, may not be joined in the same lawsuit. See FED. R. CIV. P. 20(a)(2). Prisoners who file "buckshot complaints" that include multiple unrelated claims against different individuals should not be allowed to avoid "risking multiple strikes for what should have been several different lawsuits." *Turley v. Gaetz*, 625 F.3d 1005, 1011 (7th Cir. 2010). The Court has broad

discretion when deciding whether to sever claims pursuant to Federal Rule of Civil Procedure 21 or to dismiss improperly joined defendants. *See Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011); *Rice v. Sunrise Express, Inc*., 209 F.3d 1008, 1016 (7th Cir. 2000).

Consistent with *George* and Federal Rule of Civil Procedure 21, the Court shall sever the Pinckneyville claims (*i.e*., Counts 5 through 11) against Dr. Scott, Sgt. Chapman, Lt. Pierce, Counselor Landis, Nurse Peek, C/O Smith, Officer Dudek, Love (in his official capacity), and Jane Does 1 through 4 into a new case. A new case number will be assigned to the severed case, and a separate filing fee will be assessed. The severed case shall undergo preliminary review pursuant to § 1915A. The older Lawrence claims (*i.e*., Count 1 through 4) against John Doe 1 and John Doe 2 shall remain in this action and will be screened below.

**Merits Review Under 28 U.S.C. § 1915A**

Counts 1 through 4 are the only claims that remain in this case pursuant to the severance order. These claims are now subject to preliminary review under § 1915A.

### Count 1 – Deliberate Indifference as to John Doe 1

Deliberate indifference "to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain'... proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To state a claim, a prisoner must show that: (1) he suffered from an objectively serious medical need; and (2) state officials acted with deliberate indifference to the prisoner's medical need, which is a subjective standard. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001). Deliberate indifference to a serious medical need can be manifested by "blatantly inappropriate" treatment, *Greeno v. Daley*, 414 F.3d 645, 654 (7th Cir. 2005), or by "woefully inadequate action," *Cavalieri v. Shepherd*, 321 F.3d 616, 624 (7th Cir. 2003), as well as by no action at all. Delaying

treatment may constitute deliberate indifference if such delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (internal citations and quotations omitted). *See also Farmer v. Brennan*, 511 U.S. 825, 842 (1994); *Perez v. Fenoglio*, 792 F.3d 768, 777-78 (7th Cir. 2015). However, medical malpractice, mere disagreement with a doctor's medical judgment, inadvertent error, and negligence do not amount to deliberate indifference. *Estelle*, 429 U.S. at 106; *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010); *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008); *Greeno*, 414 F.3d at 653.

In the present case, Plaintiff clearly alleges the existence of a sufficiently serious medical condition. Thus, the objective component of his Eighth Amendment claim is met. A close question is posed as to whether his allegations establish the subjective component, because the plaintiff received some medical care but disputes the adequacy of that care. Nonetheless, for purposes of the initial review, the allegations of delayed treatment that may have exacerbated Plaintiff's injury and/or unnecessarily prolonged Plaintiff's pain state a plausible deliberate indifference claim. It may turn out that John Doe 1's actions amounted, in whole or in part, to no more than negligence or an inadvertent error, but at the screening stage, the Court cannot say this with certainty. As a result, Count 1 shall proceed.

One final comment is warranted regarding the statute of limitations. The First Amended Complaint suggests that Count 1 accrued in January 2013, when Plaintiff received treatment for his hip infection in the form of surgery.[3] This action was not filed until October 17, 2016—

---

[3] *See Jervis v. Mitcheff*, 258 F. App'x 3, 5–6 (7th Cir. 2007) ( "Deliberate indifference to a serious medical need is a continuing violation that accrues when the defendant has notice of the untreated condition and ends only when treatment is provided or the inmate is released.") (citing *Heard v. Sheahan*, 253 F.3d 316, 318–19 (7th Cir. 2001)).

nearly two years too late.[4] Thus, there are questions with regard to the timeliness of this action. The statute of limitations is an affirmative defense, however, and at screening, should only be a basis for *sua sponte* dismissal when the plaintiff's submissions reveal an airtight defense. *See Richards v. Mitcheff,* 696 F.3d 635, 637 (7th Cir. 2012); *Logan v. Wilkins*, 644 F.3d 577, 582 (7th Cir. 2011). Here, Plaintiff contends he did not pursue his deliberate indifference claim because of John Doe 2's threatened retaliation (the unjustified revocation of good conduct credit). Under Illinois law, the limitations period may be tolled for equitable reasons—such as when filing has been delayed "in some extraordinary way." *Clay v. Kuhl,* 727 N.E.2d 217, 223 (Ill. 2000).[5] At this time, the Court makes no comment on whether equitable tolling is appropriate here. But considering Plaintiff's allegations pertaining to John Doe 2, the Court cannot conclude that Plaintiff's submissions reveal an airtight statute of limitations defense.[6] Accordingly, the Court will refrain from addressing the timeliness of Plaintiff's complaint with respect to the statute of limitations until such time as this issue is raised by a Defendant.

### Count 2 – Access to the Courts as to John Doe 2

Prisoners have a fundamental right of meaningful access to the courts. *Bounds v. Smith*, 430 U.S. 817 (1977). Without a right of access to the courts, all other rights an inmate may

---

[4] The applicable statute of limitations for a Section 1983 constitutional tort claim arising in Illinois is two years. *See Wallace v. Kato*, 549 U.S. 384, 387 (2007); *Turley v. Rednour*, 729 F.3d 645, 651 (7th Cir.2013).

[5] In addition, the two-year period is tolled while the prisoner exhausts the administrative grievance process. *Johnson v. Rivera*, 272 F.3d 519, 521–22 (7th Cir. 2001). State, rather than federal, doctrine of equitable tolling governs cases," where the statute of limitations is borrowed from state law. *Shropshear v. Corporation Counsel of the City of Chicago*, 275 F.3d 593 (7th Cir. 2001).

[6] For a thorough discussion of whether threatened retaliation can substantiate equitable tolling in the context of § 1983 prisoner litigation, *see Davis v. Jackson,* 2016 WL 5720811, *8-11 (S.D. New York, Sept. 30, 2016) (after evaluating authority from several jurisdictions, the district court concluded "that in the prison context, reasonable fear of retaliation may be sufficient to constitute extraordinary circumstances warranting equitable rolling, particularly if the person threatening retaliation is a defendant or another official who could be or was influenced by a defendant.") .

possess are illusory, being "entirely dependent for their existence on the whim or caprice of the prison warden." *Jenkins v. Lane*, 977 F.2d 266, 268 (7th Cir. 1992) (quoting *Adams v. Carlson*, 488 F.2d 619, 630 (7th Cir. 1973)); *DeMallory v. Cullen*, 855 F.2d 442, 446 (7th Cir. 1988). The right to access the courts is violated when a prisoner is deprived of such access and suffers actual injury as a result. *Lewis v. Casey*, 518 U.S. 343, 350 (1996). To state a claim, a plaintiff must explain "the connection between the alleged denial of access to legal materials and an inability to pursue a legitimate challenge to a conviction, sentence, or prison conditions." *Ortiz v. Downey*, 561 F.3d 664, 671 (7th Cir. 2009) (internal quotation and citation omitted); accord *Guajardo Palma v. Martinson*, 622 F.3d 801, 805-06 (7th Cir. 2010).

According to the First Amended Complaint, John Doe 2 told Plaintiff he would be punished with loss of good conduct credit if he filed grievances or pursued civil litigation pertaining to the treatment of his hip injury. It is not entirely clear whether a verbal threat, such as the one at issue here, can substantiate a § 1983 access to the courts claim.[7] In 1993, the Seventh Circuit briefly touched on the issue in an unpublished opinion involving verbal threats directed at an inmate law clerk. *Pride v. Holden,* 1 F.3d 1244 (unpublished table opinion) (7th Cir. 1993). In *Pride,* the plaintiff alleged that "verbal criticism and threatened retaliation regarding his activities as an inmate law-clerk and his assistance to other inmates in preparation of legal documents violated his First Amendment rights of expression, of association, and of

---

[7] There is some authority, from other circuits, suggesting that threats from prison officials can state a viable access to the courts claim. *See Hudspeth v. Figgins*, 584 F.2d 1345, 1347 (4th Cir.1978) (threatening prisoner with bodily harm stated a cause of action because it was possible that the threat was intended to limit the prisoner's right of access to the courts); *Lamar v. Steele*, 693 F.2d 559, 562 (5th Cir. 1982); ("The right of access may be tortiously impinged by threats, in turn triggered by efforts at court access."); *Campbell v. Beto*, 460 F.2d 765, 768 (5th Cir. 1972) ("[P]risoner access to the courts is not to be curtailed or restricted by threats, intimidation, coercion or punishment."). In *Inada v. Sullivan*, the Seventh Circuit indicated that a police officer's threat to deport an individual if he brought suit against the officer for false arrest might state a viable § 1983 claim because the alleged conduct "may constitute an interference with [the plaintiff's] rights to use the courts and to petition the government for redress of grievances." 523 F.2d 485, 489 (7th Cir. 1975). It is unclear, however, whether the same reasoning would be applicable in the context of § 1983 prisoner litigation.

access to the courts." *Id.* at *3. In rejecting the plaintiff's access to the court's claim, the Appellate Court explained:

> To state a violation of the right of access to courts, a plaintiff must allege that his access to legal materials or assistance was substantially limited and that some detriment was suffered. *Jenkins v. Lane,* 977 F.2d 266, 268 (7th Cir.1992). Neither detriment or limitation in accessing legal materials is alleged, rather Pride claims only that he was inhibited from freely exercising his right of access to the courts out of fear of retaliation. Because he has not alleged a cognizable violation, his claim fails. The failure of mere verbal threats to substantiate a deprivation of the right of access to courts also extends to Pride's claim that fear of retaliation hindered his advocation on behalf of other inmates.

*Id.*

In this case, a more fully developed record is necessary to determine whether Plaintiff can allege a cognizable violation. In particular, it is unclear whether the complained of conduct caused a hindrance with respect to Count 1. Assuming without deciding that a verbal threat can support an access to the courts claim, Count 2 shall receive further review to allow for a more fully developed record.

### Count 3 – Prior Restraint as to John Doe 2

In *Bridges v. Gilbert*, 557 F.3d 541 (7th Cir. 2009), the Seventh Circuit indicated that threatening to file a grievance or a lawsuit is not a protected First Amendment activity and thus, cannot substantiate a retaliation claim. *Id.* at 555. ("But it seems implausible that a *threat* to file a grievance would itself constitute a First Amendment-protected grievance.")(emphasis in original). Several months later, in *Fairley v. Andrews,* 578 F.3d 518 (7th Cir. 2009), the Seventh Circuit considered a related but distinguishable issue involving state actors who threaten penalties in an effort to deter future speech.

In *Fairley*, the plaintiffs (prison guards) brought a § 1983 retaliation claim alleging that they were bullied and threatened (by other guards) in order to prevent the plaintiff's from testifying in a prisoner's civil rights lawsuit. *Id.* at 524. The defendant guards argued, and the

district court agreed, that the plaintiffs did not experience retaliation because the threats preceded the plaintiffs' testimony. In overturning this portion of the district court's decision, the Seventh Circuit explained:

> The Constitution prevents governmental actors from forbidding, or penalizing, speech that is protected under the first amendment. Penalties that follow speech are forbidden. This includes, but certainly is not limited to, reactions to what has already been said. (Of course, the sanction or threat must be serious enough to deter an ordinary person from speaking.) But threats of penalties also are forbidden. That's why it can be misleading to speak of "retaliation" as the basis of a suit. The word implies that threats don't matter, and the district court here was misled.
>
> Threatening penalties for future speech goes by the name "prior restraint," and a prior restraint is the quintessential first-amendment violation. Indeed, for a time it appeared that prior restraints were the only actions forbidden by the first amendment. Later cases have held that penalties for completed speech also violate the Constitution, but this development does not suggest that only post-speech penalties now matter.

*Id.* at 525. (internal citations omitted). The Appellate Court went on to explain that it is more accurate (and less confusing) to apply the prior restraint label to such claims (as opposed to retaliation). *Id.* Regardless of the term used, *Fairley* clearly provides that the First Amendment protects "speakers from threats of punishment that are designed to discourage future speech." *Id.*

Here, Plaintiff alleges he was threatened with the unjustified revocation of good conduct credit in effort to deter Plaintiff from filing a lawsuit. Accordingly, the Court finds that Plaintiff has stated a plausible First Amendment claim for prior restraint that is sufficient at the screening stage. The Court notes, however, that in order to maintain this claim, Plaintiff will have to meet the additional requirements (causation and proof of damages) discussed in *Fairley*.

Accordingly, Count 3 shall receive further review.

***Count 4 – Equal Protection as to John Doe 2***

Plaintiff contends that John Doe 2's conduct amounts to discrimination because John Doe 2 is white and Plaintiff is black. Plaintiff also alleges that because of his interaction with John Doe 2, Plaintiff was transferred to Pinckneyville.

Racial discrimination by state actors violates the Equal Protection Clause of the Fourteenth Amendment unless it is narrowly tailored to serve a compelling state interest. *See DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000). To state an equal protection claim, a plaintiff must show that he is a member of a protected class and that: (1) he is similarly situated to members of the unprotected class, (2) he was treated differently than members of the unprotected class, and (3) the defendant acted with discriminatory intent. *Greer v. Amesqua*, 212 F.3d 358, 370 (7th Cir. 2000).

Alleging that John Doe 2 is white and Plaintiff is black does not allege that Plaintiff was treated differently or that John Doe 2 was motivated by discriminatory bias. Accordingly, Count 4 shall be dismissed without prejudice for failure to state a claim.

## **Identification of Unknown Defendant**

Plaintiff shall be allowed to proceed with Count 1 (as to John Doe 1) and Count 2 (as to John Doe 2). These defendants must be identified with particularity, however, before service of the Complaint can be made on them. Where a prisoner's complaint states specific allegations describing conduct of individual prison staff members sufficient to raise a constitutional claim, but the names of those defendants are not known, the prisoner should have the opportunity to engage in limited discovery to ascertain the identity of those defendants. *Rodriguez v. Plymouth Ambulance Serv*., 577 F.3d 816, 832 (7th Cir. 2009). Accordingly, Nicholas Lamb, in his official capacity as Warden of Lawrence, shall be added to the docket for the purpose of identifying John

Doe 1 and John Doe 2. Lamb shall be responsible for responding to discovery aimed at identifying these unknown defendants. Guidelines for discovery will be set by the United States Magistrate Judge. Once the names of the unidentified defendants are discovered, Plaintiff shall file a motion to substitute the newly identified defendant in place of the generic designation in the case caption and throughout the complaint.

**Pending Motions**

Plaintiff has filed a Motion for Recruitment of Counsel. (Doc. 10). This motion shall be **REFERRED** to United States Magistrate Judge Donald G. Wilkerson for disposition.

**Disposition**

**Dismissal of Count 12**

**IT IS HEREBY ORDERED** that **COUNT 12** is **DISMISSED** without prejudice for failure to state a claim. In relation to the dismissal of **COUNT 12, WEXFORD, HODGES,** and **LASHBROOK** are **DISMISSED** from this action without prejudice. Additionally, **LOVE** (in his individual capacity) is **DISMISSED** from this action without prejudice. **LOVE** shall remain in the action in his official capacity only for the purpose of addressing any injunctive relief that might be granted with respect to Pinckneyville (**COUNTS 5-11**) and to facilitate discovery as to any unknown Pinckneyville defendants.

**Severance**

**IT IS FURTHER ORDERED** that the remaining claims in **COUNTS 5** through **11** against **SCOTT, CHAPMAN, PIERCE, LANDIS, PEEK, SMITH, DUDEK, LOVE** (official capacity only)**,** and **JANE DOES 1** through **4**, which are unrelated to the claims in **COUNTS 1** through **4** against Defendants **JOHN DOE 1** and **JOHN DOE 2** are severed into a new case

against Defendants **SCOTT, CHAPMAN, PIERCE, LANDIS, PEEK, SMITH, DUDEK, LOVE** (official capacity only)**,** and **JANE DOES 1** through **4.**

**Newly Severed Case**

The newly severed case shall be captioned: **RONNIE PARNELL**, Plaintiff vs. **DR. SCOTT, SGT. CHAPMAN, LT. PIERCE, COUNSELOR LANDIS, NURSE PEEK, C/O SMITH, OFFICER DUDEK, LOVE** (Assistant Warden, official capacity only), **JANE DOE 1** (Nurse), **JANE DOE 2** (Nurse), **JANE DOE 3** (Nurse), and **JANE DOE 4** (Nurse), Defendants.

The Clerk is **DIRECTED** to file the following documents in the new case:

(1) This Memorandum and Order;

(2) The Original Complaint (Doc. 1);

(3) The Order Dismissing Original Complaint (Doc. 8);

(4) The First Amended Complaint (Doc. 9);

(5) The Motion for Leave to Proceed in forma pauperis (Doc. 2);

Plaintiff will be responsible for an additional $400.00[8] filing fee in the new case. The claims in the newly severed case are subject to review under 28 U.S.C. § 1915A after the new case number and judge assignment are made. No service shall be ordered on the defendants in the severed case until the § 1915A review is completed. That case is also subject to further severance, should the Court determine, as the case proceeds, that Plaintiff has improperly joined parties and/or claims in the newly severed case.

---

[8] Effective May 1, 2013, the filing fee for a civil case increased from $350.00 to $400.00, by the addition of a new $50.00 administrative fee for filing a civil action, suit, or proceeding in a district court. See Judicial Conference Schedule of Fees—District Court Miscellaneous Fee Schedule, 28 U.S.C. § 1914, No. 14. A litigant who is granted IFP status, however, is exempt from paying the new $50.00 fee.

## Merits Review of The Remaining Claims in This Case

**IT IS HEREBY ORDERED** that **COUNT 1** is subject to further review against Defendant **JOHN DOE 1.**

**IT IS FURTHER ORDERED** that **COUNT 2** is subject to further review against Defendant **JOHN DOE 2.**

**IT IS FURTHER ORDERED** that **COUNT 3** is subject to further review against Defendant **JOHN DOE 2.**

**IT IS FURTHER ORDERED** that **COUNT 4** is **DISMISSED** without prejudice for failure to state a claim.

**FURTHER,** the Clerk of the Court is **DIRECTED** to **ADD NICHOLAS LAMB**, in his official capacity as Warden of Lawrence, for the purpose of identifying **JOHN DOE 1** and **JOHN DOE 2** only.

**FURTHER**, in accord with the disposition of Count 12 as stated above, the Clerk of the Court is **DIRECTED** to terminate **WEXFORD, LASHBROOK, HODGES,** and **LOVE**[9] as defendants in this action.

**FURTHER,** in accordance with the order of severance, the Clerk of the Court is **DIRECTED** to terminate **SCOTT, CHAPMAN, PIERCE, LANDIS, PEEK, SMITH, DUDEK,** and **JANE DOES 1** through **4** as defendants in this action.

This case shall now be captioned: **RONNIE PARNELL**, Plaintiff vs. **JOHN DOE 1, JOHN DOE 2**, and **NICHOLAS LAMB** (Warden Lawrence, official capacity only), Defendants.

---

[9] **LOVE** remains an official capacity defendant in the severed action only.

Service shall not be made on the Unknown (John Doe) Defendants until such time as Plaintiff has identified them by name in a properly filed motion for substitution of parties. Plaintiff is **ADVISED** that it is Plaintiff's responsibility to provide the Court with the names and service addresses for these individuals.

With respect to **COUNT 1, COUNT 2,** and **COUNT 3** the Clerk of Court shall prepare for **LAMB**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the First Amended Complaint, and this Memorandum and Order to Defendant's place of employment as identified by Plaintiff. If Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with Defendant's current work address, or, if not known, his last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon each defendant (or upon defense counsel once an appearance is entered) a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on the defendant or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails

to include a certificate of service will be disregarded by the Court.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Donald G. Wilkerson for further pre-trial proceedings, including a decision on Plaintiff's Motion for Recruitment of Counsel (Doc. 10). Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Donald G. Wilkerson for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, despite the fact that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  July 6, 2017**

**s/ Nancy J. Rosenstengel**
**NANCY J. ROSENSTENGEL**
**United States District Judge**